## William Davis et al. v. San Antonio & Gulf Shore Railway Company.

### No. 732. Decided May 29, 1899.

**1. Railway—Corporate Stock—Sale of Property.**

The sale of the property of a railway company by a receiver under orders of the court does not have the effect, by force of article 4584d, Revised Statutes, to terminate the rights of the parties litigating over the possession and title to the stock of such corporation, by annulling such stock and destroying the subject matter of litigation, where the sale was confirmed upon the expressed condition that the court would resume possession and control of the property in case the purchaser failed or refused to pay the purchase money, and it did not appear that it had been paid or the sale completed. (Pp. 648, 649.)

**2. Same.**

If the stock so in litigation was canceled by the sale, all stock of the corporation shared the same fate, leaving the corporation without any interest to protect, and the judgment should have been a dismissal and not an order to surrender the stock to the plaintiff corporation. (P. 649.)

**3. Railway—Corporate Stock—Authority of Railway Commission.**

The duties with respect to the issuance of corporate stock imposed upon the Railroad Commission by Revised Statutes, article 4584g, are ministerial and do not involve the exercise of the power to authorize or prohibit the issuance of certificates of stock. The authority to issue is conferred upon the secretary of the corporation by the law, upon compliance with its terms. (Pp. 650, 651.)

**4. Same—Pleading.**

To an action seeking the surrender of shares of railway stock alleged to be unlawfully issued, an answer alleging compliance with the requirements of article 4584g, Revised Statutes, in their issuance is not subject to demurrer for failing to allege that the shares were authorized by the Railroad Commission. (Pp. 645-651.)

**5. Same—Action of Railroad Commission—Collateral Attack.**

Action of the Railroad Commission in authorizing or annulling the issuance of railway stock would be void, and could be attacked in any proceeding wherein its validity was in question. (P. 651.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Action by the railway against Davis et al. The trial court gave judgment for plaintiff upon defendant's refusal to amend after the sustaining of exceptions to their answer, and they appealed. On affirmance they obtained writ of error.

*Clark, Ball & Guinn,* for plaintiffs in error (*J. W. Parker,* of counsel).—It was sufficient to give value to the stock that the company complied with section 7, Acts of 1893, Twenty-third Legislature, page 58, that the stock was issued to them. This did not require a registration with the Secretary of State to authorize the issue, but only that same should be deposited with the Railway Commission, and that then the stock be issued to the subscribers, and under such circumstances the stock was not void. Rev. Stats., pp. 45, 849; Cook on Stockh., secs. 23-25.

Under the allegations and denials of defendants herein, it was certainly fundamental error for the court to hold that, unless the formal affirmative allegation was made by defendants that their shares of stock were authorized by the Railway Commission of Texas and registered by the Secretary of State, defendants were not entitled to a trial upon the merits. In other words, the trial court must have adjudged defendants' pleadings wholly without merit to authorize the judgment rendered. Warner v. Bailey, 7 Texas, 517.

The court erred in sustaining plaintiffs' third special exception, which says: "Defendants' answer seems to attack collaterally the orders of the Railroad Commission;" by reason of which objection the court below held that defendants were not entitled to have a dissolution of said injunction on their motion, or a hearing on the merits of the case on their answer unless defendants should amend their answer in pleading in this particular; but the court should have allowed the trial to go on.

The Railway Commission is not a judicial tribunal to the extent that it can divest a purchaser or subscriber of stock of his title after he has paid his money for same, and especially is this true where it appears that the stock so paid for was valid and legal, and had been first issued in strict conformity of law, and with the by-laws of the corporation, by authority of the board of directors of the corporation, and the Railroad Commission, and under their directions. Act 1893, sec. 7.

The Railroad Commission of Texas has no power or jurisdiction to cancel, annul, or avoid stock already approved and authorized to be issued by them, and we have a right to so allege in a pleading, after stating the facts that justify it.

The court erred in dismissing defendants' motion to dissolve the injunction herein and in perpetuating same, because defendants' said motion and answer, if true, entitled them to a hearing and dissolution of the injunction.

*Franklin & Cobbs*, for defendant in error.—The placing of the property of the company in the hands of a receiver in the suit in the Thirty-seventh District Court upon the application of the defendants in this suit put the possession of said property exclusively in said court, to be administered by it through its receiver for the benefit of the creditors of the company and the stockholders thereof, and a sale of said property conveyed same to the purchaser with the right of possession, which possession could not be disturbed by any other court in a collateral proceeding, and the defendants in this suit having admitted said sale, had no right to further contest in this case the right of the possession of said property. High on Receivers, secs. 2, 4, 5, 15, 196, 314, 343, 356; Russell v. Railway, 68 Texas, 646; Fordyce v. Withers, 20 S. W. Rep., 767; Railway v. Cox, 145 U. S., 601; Bank v. Calhoun, 102 U. S., 262; Abeel v. Culberson, 56 Fed. Rep., 329; White v. Ewing, 159 U. S., 39; Rouse v. Hornsby, 161 U. S., 588; Rouse v. Letcher, 156 U. S., 47; Root v. Woolworth, 150 U. S., 401; Porter v. Sabin, 149 U. S., 473; Dewey

v. Coal Co., 123 U. S., 333; Krippendorf v. Hyde, 110 U. S., 283; Freeman v. Howe, 24 How., 450; Peck v. Elliott, 79 Fed. Rep., 11; Lanning v. Osborne, 79 Fed. Rep., 662; Compton v. Jessup, 15 C. C. A., 413.

Independent of the statutes hereinafter referred to, the sale in the receivership proceedings conveyed to the purchaser all of the property, franchises, and corporate rights of the railway corporation and left nothing to the stockholders, except perhaps a corporate name. This is particularly true with reference to railroad corporations which are quasi public enterprises engaged in quasi public business and authorized by their charter to engage in and carry on said business only between the terminal points named in the charter. After the franchise to engage in and carry on such business between such terminal points is conveyed out of the corporation and placed in a purchaser there is nothing left in the original corporation by or through which it can exercise any corporate powers whatsoever, and should the stockholders undertake to utilize said corporate name in carrying on the business of a common carrier, there would.be no power left in the corporation under which this could be done. The right to hold corporate meetings and vote stock would therefore be a barren ideality. So far as the properties and franchises of the corporation are concerned, such stockholders would have no interest whatsoever after the same had passed to a purchaser, their sole interest, if any, being in such of the proceeds of such sale as might be left after the payment of all debts and the expenses of the receivership, and this interest could not be asserted by them through the corporation as such, but by them as individual stockholders asserting property rights in such balance. In the assertion of these rights, it could not possibly be necessary for them to meet as stockholders or vote their stock, for such action could only be necessary where they propose some action by the corporate body as such. This being true, it follows necessarily that the injunction restraining the defendants from voting the stock claimed by them was properly perpetuated. But if the action of the court in perpetuating the injunction be erroneous, it is not an error that can in any manner or in any way injuriously affect the defendants, and said judgment should not be reversed for an absolutely harmless error.

Under the provisions of the statutes of Texas governing sales of railroads, the sale in the receivership proceedings passed to the purchaser not only the franchises of the corporation, but its charter and its corporate existence and its property, and likewise passed to such purchaser all the stock of said corporation. These statutes were enacted prior to the organization of this railway corporation, and all stock issued by it was taken and accepted and held subject to the provisions contained in said statutes. This being true, the defendants by their own showing (they having admitted the sale) rendered it imperative upon the part of the lower court to perpetuate its injunction with reference to the voting of the stock. Certainly they could not vote stock which they did not own. Rev. Stats., arts. 4549, 4584d; Railway v. Newell, 73 Texas, 339;

Quinlan v. Railway, 89 Texas, 379; Railway v. Morris, 67 Texas, 700; Acres v. Moyne, 59 Texas, 626.

All of the injunctions in this case were granted upon hearings, and not ex parte; therefore, the defendants could not dissolve same upon sworn answer only. Sinnickson v. Johnson, 3 N. J. Eq., 374; Lowry v. Bank, 1 Clark Chan. (N. Y.), 67; Hoffman v. Livingston, 1 Johns. Chan. (N. Y.), 211; Railway v. Conner, 3 Edwards Chan. (N. Y.), 479; Dunham v. Weynans, 2 Paige Chan. (N. Y.), 24.

BROWN, ASSOCIATE JUSTICE.—On the 10th day of January, 1895, the railway company filed in the District Court of the Forty-fifth Judicial District, Bexar County, its petition against William Davis, J. C. Davis, M. T. Davis, M. Davis, J. G. Fry, J. S. Fry, J. R. Tendick, James R. Davis, John Harrington, Wm. Fry, A. J. Fry, Geo. Daily, S. Massey, and Wm. A. Harrington. The petition alleged in substance that the defendants were in the possession of certain properties of the corporation, including its stock subscription and $360,000 of its first mortgage bonds, and prayed for a writ of injunction against the defendants to prevent interference with the plaintiff's possession of the said property, and also to prohibit the defendants, their servants, agents, and employes to dispose of, damage, injure, or incumber the said bonds, stock certificates, or other property, etc. Also for a writ of mandamus requiring the defendants to deliver to the plaintiffs the bonds, stock certificates, books, papers, accounts, money, and all other property belonging to the corporation. The petition was sworn to, and on the 10th day of January, 1895, the judge directed the clerk to issue the writ of mandamus and a notice to the defendants to show cause why the injunction should not be granted.

On the 16th day of January, 1895, the defendants filed their original answer, the contents of which need not be here stated, and on that day the district judge ordered the clerk to issue a writ of injunction, enjoining the defendants from interfering with R. E. Sadler, the secretary of the plaintiff corporation, in the possession of any of the books and property named, and from interfering with J. Brown King, the treasurer of the corporation, in the possession and control of any money, financial account books, etc.

On January 25, 1895, the plaintiff filed an amended petition, naming the same defendants, and added thereto as defendants John Scott, H. O. Engelke, Geo. Dullnig, and J. S. McNeill. In addition to the averments of the original petition, it was alleged that Clifford was the president of the corporation, Sadler the secretary, and King the treasurer, and, as such officers, they were entitled to the possession of the property of the company; that the defendants were in possession of the property, except that which had been delivered under the court's order, without authority of law and without authority from the company; that they had $360,000 in mortgage bonds of the company in their possession; that the board of directors had removed William Davis from the presidency of the com-

pany on the 9th day of January, 1895, for misconduct, and had appointed Clifford general manager of the road; and prayed for a mandatory writ of injunction, enjoining defendants from disposing of or incumbering the bonds, etc. Upon this petition, the court ordered the writ to be issued with certain limitations embraced in the order of January 24, 1895.

The plaintiff filed its second amended original petition on February 20, 1895, reiterating the allegations of the original and amended petitions. In addition, they charged that the defendants William Davis, J. G. Fry, J. S. Fry, James R. Davis, Wm. D. Davis, J. E. Davis, Henry Brashear, James M. Dolan, and M. T. Davis are in possession of certain shares purporting to be the capital stock of the plaintiff corporation, in amounts stated in the petition, and represented that the shares were illegal, fraudulent, and void, issued in violation of law without the corporation having received value therefor in cash or services, and that the said shares were issued without the authority or consent of the board of directors, but that the said board of directors had ordered the same to be canceled. It was alleged that the shares of stock claimed by the defendants had never been authorized by the Railroad Commission of Texas or the Secretary of State of Texas, and that the issue of stock greatly exceeds the value of the property of said company. It was alleged that the illegal stockholders had called a meeting for the purpose of voting said illegal stock and thereby to elect themselves directors and get control of the business of the company. A mandatory injunction was prayed for to protect the plaintiff in the possession of the property and for an ancillary writ of injunction enjoining the defendants (naming them) and their assigns from voting said stock at said special meeting and from calling or holding any meeting of stockholders of the said company under and by virtue of the said stock. The judge ordered the writ of injunction to issue as prayed for.

The defendants in this suit, the plaintiffs in error here, applied to the District Court for the Thirty-seventh Judicial District of the State of Texas to appoint a receiver for the said railroad company, which was done, and the property of the said company was placed in the possession of the receiver.

On April 8, 1897, more than two years after the last order had been entered in the case, the defendants moved to dissolve the injunction granted on the 22d day of February, 1895. In the motion to dissolve the injunction, the appointment of the receiver and sale of the property is alleged, and it is averred that the injunctions are thereby rendered unnecessary. After this motion was filed, the District Court for the Forty-fifth District made an order transferring the case to the District Court of the Thirty-seventh Judicial District in which the receivership was pending.

On the 9th day of June, 1897, the plaintiffs in error filed in the District Court of the Thirty-seventh Judicial District an original amended answer containing substantially the allegations embraced in the original

answer with averments to meet the additional charges made in the plaintiff's amended petition. The amended answer denied that William Davis had ever been legally removed from the office of president of the plaintiff corporation, and denied that Clifford had ever been legally elected president of the corporation, charging that he had no right to the possession of the property. They denied that they had possession of the $360,000 in bonds of the corporation, as charged in plaintiff's petition, but admitted that they had turned over to the contractors who constructed the railroad $230,000 of the said bonds in payment for the work done. The answer denied that the board of directors of the corporation had been lawfully in session since the 8th day of January, 1895, but averred that the directors had met as conspirators for the purpose of getting possession and control of the property of the corporation.

The answer admitted that William Davis and others had possession of the shares of stock charged by the plaintiff's petition, but alleged that the certificates of stock were regularly issued by order of the board of directors of the railroad company, for money paid and services rendered to the corporation, as required by the Constitution and laws of the State of Texas. The answer avers that after the corporation was duly organized, the board of directors met in regular meeting, at the office of the company in Texas, and, by a lawful proceeding, authorized certificates of stock to issue to the different persons named for the amounts specified, and that the said board of directors authorized and empowered the president and other officers of the company to issue and deliver the shares of stock which the defendants hold and claim; and that the officers of the railroad company made up a statement, as required by the statute, showing all of the facts with reference to the issuance of the said stock, and deposited the same with the Railroad Commission of Texas. It is denied that the Railroad Commission had any authority to annul the said stock, and it is insisted that the said stock had never been lawfully canceled or in anywise annulled.

The answer alleges that the railroad property had been sold under order of the District Court by the receiver and delivered to the purchaser upon condition that the court would resume possession of the property in case the purchaser failed to pay the purchase money as prescribed by the order of the court. It was denied that the sale was legal and binding upon the defendants, but no facts are alleged showing such illegality.

On the 5th of August, 1897, the plaintiff filed an amended original petition, denying the allegations of the defendants' answer and averring that the stock claimed by the defendants was issued in violation of law and was void; that the plaintiff was never paid for the same in money or services, and that the amount of the stock was in excess of the value of the company's property when issued, and was not authorized by the Railroad Commission. That the authority to issue the stock claimed by defendants was revoked by the Railroad Commission January 29, 1895, and other shares of stock authorized, which are alleged and set out in

detail in the supplemental petition. That the stock authorized by the Railroad Commission had been regularly issued and was registered with the Secretary of State.

The supplemental petition then sets up the facts with regard to the placing of the property in the hands of a receiver, the order of sale by the receiver, the purchase of the property by Bergstrom, trustee, and the confirmation of the sale by the court. It is alleged that a deed to the property was ordered by the court to be made to Oscar Bergstrom, trustee, and possession of the property delivered to him, with a right in the court to retake possession should the trustee fail to pay the balance of the purchase money when due.

The supplemental petition contained in proper order the following exceptions to defendant's answer:

1. Said answer nowhere states that defendant's alleged shares of stock were authorized by the Railway Commission of Texas and registered by the Secretary of State.

2. Said answer seeks to attack collaterally the orders of the Railway Commission.

On the 4th day of October, 1897, the defendants presented to the District Court for the Thirty-seventh Judicial District a motion to dissolve the injunctions theretofore issued, whereupon the plaintiff insisted upon being permitted first to present the exceptions above quoted, and, over objections of defendants, the court took up the exceptions to the defendants' answer and sustained a general demurrer and the two exceptions to the defendants' answer. The defendants declined to amend their answer, whereupon the court entered its judgment, holding "that the defendants are not entitled to have a hearing upon the merits of the case on their motion or answer, for the reasons expressed in said exceptions, without amending in the particular mentioned in said first and third exceptions." The court then proceeded to enter judgment, perpetuating the injunctions theretofore granted in the cause, whereby the defendants were enjoined perpetually from voting any of the shares of stock set out in the said writ of injunction, which are the shares in controversy in this suit.

The Court of Civil Appeals affirmed that judgment.

It is claimed that all the property belonging to the corporation has been sold and delivered to the purchaser; that the corporation is insolvent, and that the stock of the defendants was canceled by the sale, whereby the subject matter of litigation has ceased to exist; wherefore, this court should not entertain jurisdiction for the purpose of determining an abstract question of law or adjusting the costs of litigation between the parties. Lacoste v. Duffy, 49 Texas, 767; Gordon v. State, 47 Texas, 208; Robinson v. State, 87 Texas, 562.

Article 4584d, Revised Statutes, reads as follows: "Every judicial or other sale of any railroad in this State hereafter made, which shall have the effect to discharge the property so sold from liability in the hands of purchasers for claims for damages, unsecured debts, or junior mort-

gages against such railroad company so sold out, shall have the effect to annul and cancel all claims of every stockholder therein to any share in the stock of such railroad." The question arises, did the sale of the property of the corporation terminate the rights of the defendants in the shares of stock claimed by them, so that there no longer exists a subject matter of litigation between the parties in this case? If the sale were absolute and completed, the effect of the statute above quoted would be to annul the stock claimed by the defendants as well as all stock in the corporation and there would be no subject for judicial determination, but from the allegations of both the plaintiff and the defendants, it appears that the confirmation of the sale was upon the expressed condition that the court would resume possession and control of the property in case the purchaser failed or refused to pay the purchase money. It is not alleged that the purchase money has been paid or that the sale has been completed, or that the court has relinquished its right to resume control of the property. Under these conditions, it might become important to the corporation, and therefore to all the lawful stockholders in it, that the court should assert the right to resume and exercise control over the property, in which event, if the defendant's stock be lawful, they would be entitled to participate equally with other stockholders in determining the action to be taken by the corporation.

If the stock claimed by the defendants was canceled by the sale of the property, then all of the stock of the corporation shared the same fate. In that state of case, the corporation was left without any interest to be protected,—the subject of litigation no longer existed,—and the court should not have entered judgment for plaintiff, but should have dismissed the case.

Likewise, if the conditions were such that a contingency might arise in which it would be important to the corporation that illegal stock should not be used to its disadvantage, then it would be equally true that, under such conditions, it would be important to the defendants, if their stock be lawful, that they should be permitted to vote it. If plaintiff was entitled to be protected against the stock, if illegal, the shareholders were equally entitled to vote it if valid. The plaintiff insisted upon a perpetuation of the injunction in order to protect its rights, thereby asserting that a state of facts might arise in which the stockholders would have interests to be protected; the court which had jurisdiction of the receivership, with the power to resume control of the property, determined that it was necessary for the protection of the plaintiff that the injunction should be perpetuated. These are significant facts, for we will not presume that the court entered a useless judgment or undertook to adjudicate dead issues. The zeal with which the plaintiff pressed the suit and the vigor with which the court applied the remedy of injunction indicate that at the trial the shares of defendants were regarded as dangerous to plaintiff, and if so, the subject of litigation had not expired.

If it clearly appeared that the stock of the corporation was canceled, this court would proceed no further, but it does not so appear, and we can not deny to the defendants the right to have a revision of errors committed in the application of the extraordinary remedy of a perpetual injunction which virtually annulled their shares of stock without the semblance of a trial.

The judgment in this case is based upon the proposition that the answer of defendants presented no defense to plaintiff's action, because it did not aver that the shares of stock claimed by them were issued by authority of or were approved by the Railroad Commission.

Article 4584k of the revised Statutes is in the following language: "Every certificate of stock in any railroad company and every bond and other evidence of debt operating as a lien upon the property of such railroad company which shall be made, issued, or sold without a compliance with this chapter, shall be void."

Article 4584g prescribes with great particularity what the board of directors and officers of a railroad corporation must do to authorize its secretary to issue certificates of stock to the subscribers. The board of directors must meet in person in the State of Texas at the principal office of the corporation and make a list of the subscribers to its stock, showing the number of shares subscribed for by each, the amount of stock · represented by each share, and the amount actually paid, labor done, or property received on each share of stock, giving to each name on the list a number, and "the president of the board, or presiding officer of the meeting at which the issuing of such certificates of stock is authorized, shall make a certificate to said statement to the effect that the same is correct, and that the amount of money paid, labor done, and property received as stated, is correct, and shall sign the same in person. Such statement shall thereupon be entered at large upon the minutes, and, after having the seal of the company affixed thereto, shall be attested by the secretary of the company and deposited with the Railroad Commission, and by it filed and preserved in the office. The secretary of the company shall then be authorized to make out and deliver to each stockholder in said list a certificate corresponding with the said statement in number, name, number of shares, amount of stock represented by each share, and the amount of money or its equivalent paid upon each share, which certificate shall be signed by the president of the said railroad company, attested by the secretary, with the seal of the said company affixed. * * * In no event shall the stock exceed the value of the railway property, and the correct aggregate amount of stock so issued by each railway company shall be certified to and registered in the office of the Secretary of State by or at the instance of the Railroad Commission." The answer alleged a compliance in every particular with the requirements of this article, and denied that the amount of stock issued exceeded the value of the property.

The foregoing article plainly imposes upon the Railroad Commission the performance of two ministerial duties with reference to the stock

of railroad companies: (1) to receive and preserve the statement of the stock required to be made out by the directors, certified and presented to it by the president of the corporation; (2) to cause the aggregate amount of stock issued by the company to be registered in the office of the Secretary of State. The performance of these ministerial duties does not involve the exercise of the power to authorize or prohibit the issuing of the certificates of stock, nor does it involve the authority to annul such shares when once issued and delivered. The secretary of the company does not derive his power to issue and deliver the shares of stock from the acceptance by the Railroad Commission of the statement required by law, but the authority to make the issue is conferred upon the secretary of the corporation by the law upon compliance with its terms. No possible construction of the language of the article can so expand it as to embrace within its terms authority for the Railroad Commission to interfere with or control the corporation in issuing certificates representing the stock subscribed for. If, without the consent of the shareholders, the Railroad Commission undertook to authorize or prohibit the issuing of the stock in this company or to annul such shares of stock when once issued, it usurped authority not conferred upon it by the laws of the State, and its acts were null and void and may be attacked in any proceeding wherein their validity is in question.

The District Court erred in sustaining the demurrer and exceptions to the defendant's answer and in entering judgment perpetuating the injunctions without trial upon the merits of the case, and the Court of Civil Appeals erred in affirming that judgment. It is therefore ordered that the judgments of the District Court and of the Court of Civil Appeals be reversed and that this cause be remanded to the District Court of the Thirty-seventh Judicial District for further trial, and that the plaintiffs in error recover of the defendant in error all costs in the Court of Civil Appeals and in this court.

*Reversed and remanded.*